IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AVEPOINT, INC., *and* ) | |
| AVEPOINT PUBLIC SECTOR, INC., ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-209 |
| ) | |
| ROBERT KNICKERBOCKER, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

AvePoint, Inc. ("API") and AvePoint Public Sector, Inc. ("APSI," and collectively with API, "AvePoint") have filed this declaratory judgment action against Robert Knickerbocker, a former employee of APSI. AvePoint seeks a declaration (1) that Knickerbocker's at-will employment with APSI was properly terminated and (2) that AvePoint has no obligation to pay any additional commissions or other amounts to Knickerbocker. The matter is before the Court on Knickerbocker's motion to dismiss. Knickerbocker argues for dismissal on the ground that the district court should not exercise declaratory judgment jurisdiction over AvePoint's complaint because (i) this declaratory judgment action does not serve the purposes of the Declaratory Judgment Act; (ii) AvePoint has filed this declaratory judgment action as a procedural-fencing tactic; (iii) dismissal of this declaratory judgment action would promote judicial economy; and (iv) dismissal would be fair to both parties.

The matter has been fully briefed and telephonically argued orally, and thus is now ripe for disposition. For the reasons that follow, it is appropriate to decline to exercise declaratory judgment jurisdiction in this case. Accordingly, Knickerbocker's motion to dismiss must be granted.

**I.**

It is first appropriate to set forth the pertinent factual and procedural history of this dispute.[1] On or about November 13, 2017, APSI hired Knickerbocker as a Senior Account Executive at its headquarters in Arlington, Virginia. *See* Complaint, Dkt. 1, at ¶ 11. During his employment with APSI, Knickerbocker agreed to the terms and conditions of the 2019 Sales Representative Compensation Plan dated January 1, 2019 (the "Plan"), and Knickerbocker received payment of commissions pursuant to the terms of the Plan. *See id.* at ¶ 14. Section 5 of the Plan that Knickerbocker executed with AvePoint (the "Termination Clause") provides that:

> A sales representative will be paid commissions earned pursuant to Section 3 hereof through the last date of employment. This commission will be paid out as soon as practicable and in accordance with applicable law. After the sales representative is separated from AvePoint, the sales representative will receive commission if the following conditions are met:
>
> > 1) Product commission: The invoice is sent out/or payment is received from the customer within 5 business days after the employee's separation date;
> > 2) For Services and Renewal commission: the payment is received within 5 business days after the separation date; and
> > 3) The opportunity is not considered bad debt.
>
> A sales representative will not be entitled to any other additional commission at or following the date of separation from AvePoint.

*See* 2019 Sales Representative Compensation Plan, Dkt. 1-1, at 8.

In late 2018, Knickerbocker alleges that he secured APSI's most valuable software sales contract ("the IRS account"). *See* Knickerbocker Complaint, *Knickerbocker v. AvePoint*, 1:20-cv-505, Dkt. 1, at ¶ 13 (D. Md. Feb. 26, 2020). As a result of landing the IRS account, Knickerbocker allegedly received APSI's "Top Producer Award," which included a two-week paid vacation. *See*

---

[1] The factual history recited *infra* is derived from AvePoint's complaint in this declaratory judgment action except where explicitly noted that judicial notice is taken of pleadings in the other cases related to this dispute.

*id.* at ¶ 15. Knickerbocker planned to depart on the company-paid vacation on August 8, 2019. *See id.* at ¶ 16.[2]

On August 7, 2019, one day prior to Knickerbocker's planned company-paid vacation, APSI terminated Knickerbocker's at-will employment as a Senior Account Executive. *See* Complaint, Dkt. 1, at ¶ 17. By email dated August 8, 2019, AvePoint's Senior Director of People and Talent Acquisition Melissa Fingerhut provided Knickerbocker with his separation details and reminded Knickerbocker that any outstanding commission would be paid in accordance with the Termination Clause in the Plan. *See id.* at ¶ 19. AvePoint's complaint alleges that Knickerbocker is not entitled to any additional commissions under the Plan because no additional invoices were sent out and no additional payments were received from customers within five business days of Knickerbocker's termination from employment with AvePoint. *See id.* at ¶¶ 20-21.

On September 10, 2019, Knickerbocker's counsel sent a letter to APSI demanding that Knickerbocker be paid additional commissions allegedly owed under the Plan in the amount of $492,301.00 ("First Demand Letter"). *See id.* at ¶ 22. On September 30, 2019, Knickerbocker's counsel sent a second letter to APSI reiterating his demand regarding allegedly unpaid commissions and threatening to file suit against AvePoint if AvePoint did not respond to the letter within 10 business days ("Second Demand Letter"). *See id.* at ¶ 27. On November 2, 2019, AvePoint's counsel emailed a response letter to Knickerbocker's counsel ("Response Letter"). *See id.* at ¶ 28. The Response Letter explained that AvePoint's position is that Knickerbocker does not have any cause of action against AvePoint arising from: (1) APSI's termination of Knickerbocker's employment as a Senior Account Executive at APSI; or (2) APSI's non-payment of additional

---

[2] The facts in the preceding paragraph are derived from Knickerbocker's complaint against AvePoint filed in the District of Maryland on February 26, 2020. *See* Knickerbocker Complaint, *Knickerbocker v. AvePoint*, 1:20-cv-505, Dkt. 1 (D. Md. Feb. 26, 2020).

3

commissions under the Plan. *Id.* Less than 30 minutes later, Knickerbocker's counsel responded to AvePoint's counsel requesting that AvePoint's counsel confirm whether counsel is empowered to accept service of process on behalf of AvePoint. *See id.* at ¶ 29. Approximately 20 minutes after that, AvePoint's counsel responded that he is not authorized to accept service of process on behalf of AvePoint. *See id.* Then, 25 minutes later, Knickerbocker's counsel responded that he would serve AvePoint's resident agent. *See id.*

On November 3, 2019, less than 24 hours after this email exchange between the parties' attorneys, AvePoint filed a declaratory judgment complaint based on these same facts in the Western District of Virginia, Roanoke Division (the "Predecessor Action"). *See AvePoint v. Knickerbocker*, 7:19-cv-739, Dkt. 1 (W.D. Va. Nov. 3, 2019). On November 25, 2019, Knickerbocker filed a motion to dismiss the Predecessor Action for lack of jurisdiction, or in the alternative to transfer the Predecessor Action to the District of Maryland. *See id.*, at Dkt. 8 (W.D. Va. Nov. 25, 2019). In response, AvePoint argued that the Predecessor Action should proceed in Roanoke or be transferred to the Alexandria or Richmond Division of the Eastern District of Virginia. On February 25, 2020, an Order issued dismissing the Predecessor Action for lack of venue (the "WDVA Dismissal Order"). *See id.*, at Dkt. 19, 20 (W.D. Va. Feb. 25, 2019). Specifically, the court in the Predecessor Action concluded that "[t]he mere fact that AvePoint's attorney is based in Roanoke is insufficient to make venue proper in this district." *See id.*, Dkt. 18, at 6. Accordingly, the Predecessor Action was dismissed without prejudice.

On February 25, 2020, the same day that the Predecessor Action in the Western District of Virginia was dismissed for lack of venue, AvePoint filed the instant complaint for declaratory relief in the Alexandria Division of the Eastern District of Virginia. *See AvePoint v. Knickerbocker*, 1:20-cv-209, Dkt. 1 (E.D. Va. Feb. 25, 2020). The next day, February 26, 2020, Knickerbocker

filed suit against AvePoint in the District of Maryland, alleging violations of the Maryland Wage Payment and Collection Law (the "Maryland Action"). *See Knickerbocker v. AvePoint*, 1:20-cv-505, Dkt. 1 (D. Md. Feb. 26, 2020). The Maryland Action involves the exact same parties and facts, and essentially the same dispute as the instant action.[3]

On June 9, 2020, Knickerbocker filed the motion to dismiss at issue here. Knickerbocker argues for dismissal on the ground that the district court should not exercise declaratory judgment jurisdiction over AvePoint's complaint because (i) this declaratory judgment action related to an alleged breach of contract does not serve the purposes of the Declaratory Judgment Act; (ii) AvePoint has filed this declaratory judgment action as a procedural-fencing tactic; (iii) dismissal of this declaratory judgment action would promote judicial economy because Knickerbocker has filed the Maryland Action; and (iv) dismissal would be fair to both parties. AvePoint opposes Knickerbocker's motion to dismiss, arguing that (i) the exercise of declaratory judgment jurisdiction over this matter is proper; (ii) the WDVA Dismissal Order authorized AvePoint to maintain this action and select this forum; and (iii) neither dismissal nor transfer would promote judicial efficiency because Maryland likely does not have jurisdiction over AvePoint.

## II.

Although the Fourth Circuit has not set forth a specific list of factors for a district court to consider in determining whether to exercise its discretion to hear a declaratory judgment action, the Fourth Circuit and district courts within the Fourth Circuit have sensibly applied the following four factors in the various cases presented:[4]

---

[3] On July 28, 2020, AvePoint filed a motion to dismiss the Maryland Action pursuant to Rules 12(b)(2), (3), and (6), Fed. R. Civ. P. *See Knickerbocker v. AvePoint*, 1:20-cv-505, Dkt. 9 (D. Md. July 28, 2020).

[4] *See The Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008) (listing and applying the four factors) (citing *Sherwin–Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003); *Learning Network v.*

5

- (1) whether the action serves the purpose of the Declaratory Judgment Act;[5]

- (2) whether the action constitutes procedural fencing;[6]

- (3) whether judicial efficiency is served by exercising declaratory judgment jurisdiction;[7] and

- (4) whether the exercise of declaratory judgment jurisdiction is fair to the parties.[8]

Each factor is considered in turn *infra*.

### A.

Analysis appropriately begins with a review of the Declaratory Judgment Act and the circumstances in which it is appropriate to entertain such actions. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction...any court of the United States...*may* declare the rights and other legal relations of any interested party seeking such declaration..." 28 U.S.C. § 2201(a) (emphasis added).[9] As courts have uniformly recognized, "[t]his power has consistently been considered discretionary." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). The Fourth Circuit has provided guidance on the exercise of this discretionary power, commenting that a declaratory judgment action is appropriate "when the

---

*Discovery Commc'ns*, 11 Fed. Appx. 297, 301 (4th Cir. 2001); *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002); *Yoder v. Heinold Commodities, Inc.*, 630 F. Supp. 756, 760–62 (E.D. Va. 1986)).

[5] *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (holding that a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and...when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding").

[6] *See Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937) (Courts should decline jurisdiction over declaratory judgment actions filed "for the purpose of anticipating the trial of an issue in a court of coordinate jurisdiction.")

[7] *See Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992) (holding that [i]n deciding whether to entertain a declaratory judgment action, a federal court should analyze whether its resolution of the declaratory action will settle all aspects of the legal controversy").

[8] *See The Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 617 (E.D. Va. 2008).

[9] Subject matter jurisdiction plainly exists over this dispute, as there is complete diversity of citizenship between the parties and the amount-in-controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and…when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.*

It follows that a declaratory judgment is "unavailable in situations where…claims and rights asserted have fully matured, and the alleged wrongs have already been suffered." *Hanback v. DRHI, Inc.*, 94 F. Supp. 3d 753, 758 (E.D. Va. 2015), *aff'd*, 647 F. App'x 207 (4th Cir. 2016) (citation omitted). In other words, when a breach of contract has already occurred and damages have already accrued, "there is no guidance" that can be offered via a declaratory judgment to steer "conduct away from a breach of contract." *Id.* (citing *The Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008)); *see also Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) (noting that declaratory judgments are inappropriate "if the questionable conduct has already occurred or damages have already accrued").

These settled principles, applied here, point convincingly to the conclusion that AvePoint's declaratory judgment claim must be dismissed. According to the complaint, AvePoint terminated Knickerbocker's employment on August 7, 2019. *See* Compl. at ¶ 17. And the Termination Clause in the Plan provides that terminated employees are only entitled to commissions that have been invoiced or paid within five business days of an employee's termination. *Id.* at ¶ 16. In this respect, the complaint in this case alleges that no invoices were sent out and no payments were received from customers within five business days of Knickerbocker's termination, and therefore, AvePoint contends that Knickerbocker has been properly compensated pursuant to the terms of the Plan. *Id.* at ¶ 20-21. Thus, as the complaint plainly reflects, the alleged breach of contract and damages in this case have already occurred. Knickerbocker has been terminated from his employment at AvePoint since August 2019, and any alleged unpaid commissions are from sales made prior to

7

Knickerbocker's termination in August 2019. It follows that a declaratory judgment is inappropriate and unwarranted in this case because such a declaration would not clarify uncertain legal relations between the parties in an ongoing relationship, nor would it provide the parties with any guidance for future conduct pursuant to the Plan executed by Knickerbocker.[10] Accordingly, it is appropriate to decline to exercise jurisdiction over AvePoint's declaratory judgment claim because it does not serve the purpose of the Declaratory Judgment Act.

Seeking to avoid this conclusion, AvePoint relies on *Dyncorp v. Carnicero*, 996 F.2d 55 (4th Cir. 1993) for the proposition that a dispute over an employment contract is an appropriate declaratory judgment action. But *Dyncorp* is clearly distinguishable from the situation presented here. Importantly, *Dyncorp* does not address the question at issue here, namely whether a district court should exercise its discretionary jurisdiction over a declaratory judgment action. Instead, *Dyncorp* is a Fourth Circuit decision reversing a district court's grant of summary judgment in a declaratory judgment case, and there is no indication that the issue of the discretionary exercise of declaratory judgment jurisdiction was ever raised or decided in that case. *See id.* at 56. Moreover, the parties in *Dyncorp* were still in an ongoing employment relationship when the declaratory judgment action was filed, and the company filed the action prior to any harm occurring from the alleged breach of contract. *See id.* at 56-57. In stark contrast, the parties in this case are no longer in an employment relationship, and Knickerbocker has already suffered harm from the alleged breach of contract, namely purportedly unpaid commissions. Accordingly, *Dyncorp* provides no support for AvePoint's argument that the exercise of declaratory judgment jurisdiction over this dispute is appropriate.

---

[10] As noted *infra*, AvePoint claims that a declaratory judgment in this case would provide guidance with respect to AvePoint's relationship with other AvePoint employees. But that is an inappropriate basis to exercise declaratory judgment jurisdiction over this dispute between AvePoint and Knickerbocker for the reasons stated *infra*.

AvePoint also argues that the exercise of declaratory judgment jurisdiction over this dispute is appropriate because resolution of this dispute would clarify AvePoint's relationship with its employees generally. Although that is an understandable business reason for AvePoint to seek a declaratory judgment, it is not an appropriate reason to exercise declaratory judgment jurisdiction. There is no evidence that the Plan disputed here is the same agreement executed by other AvePoint employees or that other AvePoint employees dispute the terms of their agreements with AvePoint related to commission payments. The dispute at issue here is clearly a specific dispute between AvePoint and a single employee, Knickerbocker.[11] Accordingly, it is not appropriate to exercise declaratory judgment jurisdiction over this dispute.

### B.

Even assuming, *arguendo*, that the exercise of declaratory judgment jurisdiction over this dispute were proper (which it is not), AvePoint's use of procedural fencing tactics in this matter counsels against the exercise of declaratory judgment jurisdiction here.

In this respect, it is well-established that courts disfavor "procedural fencing," such as forum shopping and races to the courthouse. *See e.g., Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937) (Courts should decline jurisdiction over declaratory judgment actions filed "for the purpose of anticipating the trial of an issue in a court of coordinate jurisdiction."). Such procedural fencing is a factor that counsels against exercising jurisdiction over a declaratory judgment action. *See Myles Lumber Co. v. CNA Financial Corp.*, 233 F.3d 821, 824 (4th Cir. 2000); *Centennial Life Ins. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996); *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994). Thus, in circumstances where a potential

---

[11] During oral argument, AvePoint's counsel represented that AvePoint's alleged liability to Knickerbocker is continually changing. Evidence in support of that contention is not properly presented in this case at this time, and even if true, it would not alter the conclusion reached in this Memorandum Opinion.

lawsuit has become essentially certain or imminent, a declaratory judgment action is appropriately dismissed as an improper act of forum shopping. *See Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 F. App'x 297, 301 (4th Cir. 2001).[12]

This is precisely what occurred here. AvePoint first filed this declaratory judgment action within 24 hours of Knickerbocker's counsel inquiring as to who is authorized to accept service of process on behalf of AvePoint. Knickerbocker's counsel had already sent AvePoint two demand letters detailing Knickerbocker's unpaid commission claims, and the Second Demand Letter threatened to file suit if AvePoint did not respond within ten business days. Where, as here, a suit for declaratory judgment is filed after notice that an opposing party's own action may be filed imminently, an inference arises that the declaratory judgment action was merely a preemptive strike rather than an appropriate suit for damages or equitable relief. *See, e.g., Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir. 1993).[13] This inference is further supported by the fact that AvePoint filed the instant complaint *on the same day* that the Predecessor Action brought by AvePoint was dismissed without prejudice by the U.S. District Court for the Western District of Virginia for lack of venue.

In filing these two declaratory judgment actions, it is clear that AvePoint attempted to "wrest[ ] the choice of forum from the 'natural' plaintiff," which runs directly contrary to the prevailing view, which is "not to give the alleged wrongdoer a choice of forum." *Publications Int'l, Ltd. v. McRae*, 953 F. Supp. 223, 224 (N.D. Ill. 1996) (citing *Cunningham Brothers, Inc. v.*

---

[12] *See also Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. 1983) (holding that it is appropriate for a federal district court to decline jurisdiction over a declaratory judgment action where the declaratory judgment action was filed in apparent anticipation of a suit in another forum); *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (same).

[13] *See also Myles Lumber Co. v. CAN Fin. Corp.*, 233 F.3d 821, 824 (4th Cir. 2000) (noting one factor for determining whether to decline to exercise jurisdiction over a declaratory judgment action is "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'").

*Bail*, 407 F.2d 1165 (7th Cir. 1969), *cert. denied*, 395 U.S. 959 (1969)). And a "federal declaratory judgment is not a prize to the winner of a race to the courthouses." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979). Accordingly, the exercise of declaratory judgment jurisdiction is improper here because Knickerbocker's filing of a lawsuit against AvePoint was essentially certain when AvePoint filed its declaratory judgment action.

Seeking to avoid this conclusion, AvePoint argues that the WDVA Dismissal Order authorized AvePoint to file this action in the Eastern District of Virginia and that permitting Knickerbocker to proceed with the Maryland Action circumvents the WDVA Dismissal Order. AvePoint's argument in this respect plainly fails and is belied by even a cursory review of the WDVA Dismissal Order. That WDVA Dismissal Order concluded only that dismissal was the appropriate remedy where "venue is clearly lacking in the Western District of Virginia, and AvePoint has not identified any procedural bar that would prevent it from refiling in a proper forum." *AvePoint v. Knickerbocker*, 7:19-cv-739, Dkt. 19, at 6 (W.D. Va. Feb. 25, 2020). Thus, it is abundantly clear that the court in the Western District of Virginia expressed no opinion as to whether the Eastern District of Virginia, the District of Maryland, or some other judicial district is the appropriate forum for this dispute.[14] Instead, the Western District of Virginia court declined to address the parties' transfer requests because that court deemed that it was not necessary to do so. Accordingly, AvePoint's contention that dismissal of this Eastern District of Virginia action would somehow contradict the WDVA Dismissal Order is plainly meritless.

---

[14] At oral argument, AvePoint's counsel conceded that the Western District of Virginia court did not address whether the exercise of declaratory judgment jurisdiction over this dispute was appropriate.

11

## C.

Moreover, Knickerbocker argues that judicial economy weighs in favor of dismissal here. It is well-settled that judicial economy is not served by trying "a controversy by piecemeal, or [trying] particular issues without settling the entire controversy..." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (citations omitted). The Fourth Circuit has made clear that "[i]n deciding whether to entertain a declaratory judgment action, a federal court should analyze whether its resolution of the declaratory action will settle all aspects of the legal controversy." *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992). This declaratory judgment action may not resolve the entire dispute between the parties, and therefore it is appropriate to decline to exercise declaratory judgment jurisdiction over this dispute.

Here, AvePoint seeks a declaration that Knickerbocker is not entitled to the payment of any additional commissions under his 2019 Sales Representative Compensation Plan. It is abundantly clear that a declaratory judgment here may not dispose of the entire dispute between the parties. Only if AvePoint were to win on the merits and obtain the declaration it seeks would it do so. Indeed, if this action were to be decided against AvePoint on the merits of the declaratory judgment complaint, another court would have to address the breach of contract and damages issues. Thus, the District of Maryland lawsuit for violations of the Maryland Wage Payment and Collection Law "provides a broader and more comprehensive forum for resolving the entire dispute between the parties." *First Nationwide Mortg. Corp. v. FISI Madison, LLC*, 219 F. Supp. 2d 669, 674 (D. Md. 2002). Moreover, whether a declaratory judgment in AvePoint's favor would dispose of some other potential dispute with some other AvePoint employee is utterly unknown and not for this Court to decide at this time. Accordingly, it is not appropriate to exercise declaratory judgment jurisdiction over this dispute between AvePoint and Knickerbocker.

Seeking to avoid this conclusion, AvePoint argues that judicial economy does not warrant dismissal of this action in the Eastern District of Virginia because Maryland lacks personal jurisdiction over AvePoint, and therefore, Knickerbocker's Maryland Action is futile. In support of this argument, AvePoint emphasizes that this is a Virginia employment dispute involving a Plan allegedly governed by Virginia law and that all of the actions giving rise to specific jurisdiction in this case occurred in Virginia. It is inappropriate to reach or decide whether the Plan is a Virginia contract or what law governs this dispute at this time. Indeed, the parties' briefs do not address this issue adequately. But it is appropriate to acknowledge the possibility that the District of Maryland court *could* transfer Knickerbocker's lawsuit from the District of Maryland to the Eastern District of Virginia. And moreover, even if the District of Maryland court were to transfer the Maryland Action to the Eastern District of Virginia, at least the parties and the burdens of proof would be properly aligned, and the entire dispute could be resolved.

In any event, whether the District of Maryland has personal jurisdiction over AvePoint is a matter to be decided by the Maryland federal court; it is not a factor to be considered in determining whether to exercise declaratory judgment jurisdiction here. *See MCCOA, LLC v. Retail Serv. Sys., Inc.*, No. 7:17-CV-00505, 2018 WL 662507, at *3 (W.D. Va. Feb. 1, 2018) (citing *Yoder v. Heinold Commodities, Inc.*, 630 F. Supp. 756, 761 (E.D. Va. 1986)). The determination of whether Virginia or Maryland "is the better forum is a question that should be decided by the court chosen by the putative[15] plaintiff." *The Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 616 (E.D. Va. 2008) (citation omitted). Accordingly, AvePoint's argument with respect to jurisdiction in the Maryland Action is not properly raised here and does not shift the overwhelming

---

[15] In general, a "putative plaintiff" is an alleged victim, whereas the "putative defendant" is the alleged wrongdoer. For example, the party who allegedly breached the contract, here AvePoint, would be the putative defendant, even though AvePoint filed this action for declaratory judgment.

13

weight of the factors in favor of declining the exercise of jurisdiction over this declaratory judgment action.

### D.

Finally, Knickerbocker argues that dismissal of this declaratory judgment action and proceeding with the Maryland Action would be fair to both parties. At oral argument, Knickerbocker's counsel conceded that the District of Maryland and the Eastern District of Virginia were equally convenient forums for the parties. But unless the Maryland Action is dismissed, AvePoint and its witnesses will be required to travel to Maryland regardless of what is decided here. Accordingly, the consideration of convenience and fairness is a neutral factor here and does not play a significant role in the analysis.

* * *

In sum, it is appropriate to decline to exercise jurisdiction over this declaratory judgment action because (i) the exercise of declaratory judgment jurisdiction over this breach of contract dispute is improper; (ii) AvePoint's use of procedural fencing tactics to bring this action in the Eastern District of Virginia weighs against the exercise of declaratory judgment jurisdiction; and (iii) judicial economy weighs in favor of dismissal here because resolution of this declaratory judgment action may not resolve the entirety of the underlying controversy between the parties.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record.

Alexandria, Virginia
July 30, 2020

T. S. Ellis, III
United States District Judge